OPINION
Relators-appellants, the Bryco Company ("Bryco"), Ann Gatch, Trustee ("Gatch"), and Sax Realty Company ("Sax Realty"), appeal from a decision of the Clermont County Court of Common Pleas denying their motion for a writ of mandamus. Appellants sought a writ of mandamus requiring respondents-appellees, the city of Milford ("Milford"), Milford's acting engineer William White ("White"), and Milford's assistant manager and zoning director Christopher Anderson, to issue a permit for the installation of sanitary sewers on two tracts of land. We affirm the decision of the common pleas court.
Bryco owns a 128.84 acre tract of land in Milford which it seeks to develop as the "Sanctuary at Miami's Fork" (the "Sanctuary"). The proposed development would consist of one hundred fifty single-family homes, ninety condominiums, and recreational and community facilities. Gatch owns a contiguous 79.63 acre tract of land in Milford. Sax Realty seeks to develop the Gatch property as "Riverwoods Park" ("Riverwoods"). The proposed development would consist of three hundred ten manufactured homes and recreational facilities. John Sansalone ("Sansalone") is a developer, the president of Sax Realty, and has served as a consultant to Bryco. The development of both tracts would add approximately five hundred housing units to Milford, representing approximately a twenty percent increase in Milford's housing units.
The two tracts of land were both annexed by Milford in 1981. At the time of the annexation, both tracts were zoned "H Resort" under the Miami township (the "township") zoning code. Although annexed by Milford in 1981, the Gatch property remained subject to the township zoning jurisdiction until December 3, 1996, when Milford officially adopted the township zoning code for the Gatch property.[1] Apparently, the Bryco property became subject to Milford zoning jurisdiction shortly after its annexation by Milford.
The Gatch property stands between the Milford Waste Water Treatment Plant and the Bryco property. In order to complete a sewer connection to the Bryco property, a sewer line must be built through the Gatch property first. As a result, although a final development plan was approved by Milford for the Sanctuary on the Bryco property, construction drawings for the Sanctuary sewer system were never completed. Appellants also never applied to the Ohio Environmental Protection Agency ("EPA") for a permit to construct sewers on the Bryco property.
On July 26, 1996, appellants applied to the township zoning commission for a zoning certificate for Riverwoods. On August 9, 1996, the township zoning inspector granted zoning approval as follows: "This is to certify that [the Riverwoods development is] in conformity with the provisions of the `H' Resort District Regulations set forth in * * * the Miami Township Zoning Resolution and that said proposed uses conform with all the requirements of the Miami Township Zoning Resolution." The zoning inspector granted a zoning permit for the development on September 27, 1996.
Subsequently, construction drawings were prepared and plans were submitted to Milford for the Riverwoods sewer system. In October 1996, White, Milford's acting engineer, approved the drawings and the plans. From October 1996 to June 1997, approvals for the sewer system were sought from and given by the Clermont County Board of Health, the State of Ohio Department of Health, and the Ohio EPA. From June to September 1997, the sewer plans were reviewed by White and an outside consultant for Milford, revised by Sansalone, and resubmitted to and approved by the Ohio EPA.
On September 30, 1997, appellants filed a complaint for, inter alia, a writ of mandamus to compel Milford to issue sewer permits for both tracts of land. From September to November 1997, the sewer plans were reviewed by a city consultant, and several additional changes were made at the consultant's request. During that time period, the Milford law director notified Sansalone in writing that:
 [Y]ou are apparently operating under the erroneous belief that you can develop Riverwoods Park as a Manufactured Home Park or as a site for the permanent placement and occupancy of trailers, manufactured homes and/or mobile homes.
 As you are well aware, the property is not zoned as a Manufactured Home Park or for the permanent placement and occupancy of trailers, mobile homes, etc. The property is zoned Miami Township H-Resort and that zoning is being monitored and enforced by the City of Milford. While trailers are permitted on the property, their occupancy is restricted to the period from May 15 to October 1. Year-round occupancy of trailers or mobile homes is not permitted in H-Resort.
 You will, of course, be permitted to develop the property pursuant to and in accordance with all the applicable zoning laws and regulations.
In a subsequent letter, the law director reiterated his position that "year-round occupancy of any form [was prohibited] in Riverwoods Park as long as it remain[ed] zoned Miami Township "H" Resort." In response, Sansalone notified him in writing of appellants' intention to develop Riverwoods under the H Resort District with permanent manufactured homes. Sansalone disagreed with the law director's position prohibiting year-round occupancy of permanent manufactured homes.
On November 14, 1997, White informed Sansalone that the revised sewer plans for Riverwoods would be approved upon payment of a $4,000 inspection fee. White testified that had he received the inspection fee check, he would have authorized construction of the sewer system for Riverwoods. White also testified that he did not review the township zoning approval for Riverwoods, that zoning was handled by Christopher Anderson ("Anderson"), Milford zoning director, and that he (White) would have approved construction of the sewer system "[o]nly if it had been approved by the zoning."
By letter dated December 4, 1997, Anderson notified appellants that sewer permits for Riverwoods would not be issued for the following reasons:
 Please be advised that the City of Milford believes that your proposed [Riverwoods Manufactured Home Park] project would be in violation of the existing H Resort zoning on the property. Therefore, the City will issue no permits in furtherance of the proposed project.
 Your correspondence * * * indicated that the project would be for manufactured homes. Manufactured homes are not included in the definition of "trailer" (Article XX of the Miami Township Zoning Resolution). The Miami Township H Resort Zoning Regulations permit trailers with their wheels still attached. Manufactured homes, in contrast, are affixed to the ground. The Zoning Resolution also contains limits prohibiting year-round occupancy of the site.
 In addition, your site approval, granted August 9, 1997 [sic], has passed its one-year expiration date without an application for extension. It is therefore null and void.
 Due to the evidence that you intend to develop this park in violation of the applicable zoning, the expiration of your site plan approval, and based upon advice of counsel, the City of Milford will not issue any permits in furtherance of your application.
Appellants never appealed Anderson's refusal to issue permits for Riverwoods. Rather, on August 7, 1998, appellants filed a "motion for a writ of mandamus" ordering White to issue a permit for the installation of sanitary sewers to serve both the Bryco and Gatch properties. Following three evidentiary hearings, the common pleas court denied appellants' motion on August 7, 2000. This appeal follows in which appellants raise the following six assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-RELATORS-APPELLANTS BY RULING THAT THEY WERE NOT ENTITLED TO A WRIT OF MANDAMUS TO COMPEL THE ISSUANCE OF A SEWER PERMIT BECAUSE THEY HAD AN ADEQUATE REMEDY AT LAW BY WAY OF AN ADMINISTRATIVE APPEAL UNDER R.C. 2506.01, ET SEQ.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-RELATORS-APPELLANTS BY DENYING THE WRIT OF MANDAMUS FOR THE ISSUANCE OF THE SEWER PERMIT ON THE GROUNDS THAT THE LETTER ISSUED BY ASSISTANT CITY MANAGER CHRISTOPHER ANDERSON ON DECEMBER 4, 1997 ADVISING THAT SEWER PERMITS WOULD NOT BE ISSUED IS A FINAL DECISION WITHIN THE MEANING OF R.C. 2506.01 AND WAS APPEALABLE TO THE TRIAL COURT.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF'S [sic] RELATORS BY DENYING THE WRIT OF MANDAMUS ON THE GROUNDS THAT THE CITY OF MILFORD HAD THE AUTHORITY AND JURISDICTION TO INTERPRET THE ZONING REGULATIONS OF MIAMI TOWNSHIP DIFFERENTLY FROM THE MIAMI TOWNSHIP ZONING INSPECTOR.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-RELATORS-APPELLANTS BY DENYING A WRIT OF MANDAMUS ON THE GROUNDS THAT THE MOBILE HOMES PROPOSED FOR THE GATCH PROPERTY ARE NOT A PERMITTED USE UNDER THE APPLICABLE "H" RESORT DISTRICT ZONING REGULATIONS.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-RELATORS-APPELLANTS BY DENYING THE WRIT OF MANDAMUS ON THE GROUNDS THAT THE SITE PLAN APPROVED BY MIAMI TOWNSHIP EXPIRED ON AUGUST 9, 1997.
Assignment of Error No. 6:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-RELATORS-APPELLANTS BY DENYING THE WRIT OF MANDAMUS FOR THE ISSUANCE OF THE SEWER PERMIT FOR THE BRYCO TRACT FOR THE SANCTUARY AT MIAMI'S FORK ON THE GROUNDS THAT ALL NECESSARY SUBMITTALS HAD NOT BEEN MADE TO FINALIZE THE APPLICATION FOR A SEWER PERMIT.
In their first assignment of error, appellants challenge the common pleas court's finding that appellants "were not entitled to a writ of mandamus * * * because they had an adequate remedy at law by way of an administrative appeal under R.C. 2506.01[.]" Appellants first contend that they were entitled to a sewer permit for both properties because they had complied with all legislative and regulatory requirements. Appellants also contend they are entitled to a writ of mandamus because an administrative appeal under R.C. 2506.01 "would not be adequate."
R.C. 2731.01 defines mandamus as "a writ * * * commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." A writ of mandamus will not be issued unless the relator shows: (1) a clear legal right to relief, (2) a clear legal duty on the part of the respondent to perform the requested act, and (3) no plain and adequate remedy in the ordinary course of law. Stateex rel. Harris v. Rhodes (1978), 54 Ohio St.2d 41, 42. Mandamus is not a substitute for appeal, State ex rel. Casey v. Court of Appeals (1972),29 Ohio St.2d 90, 91, and is not available where there is a plain and adequate remedy in the course of law. Lippert v. Engle (1977),52 Ohio St.2d 67.
We reject appellants' contention that they were entitled to a sewer permit for both properties because they had complied with all legislative and regulatory requirements. While a final development plan was approved by Milford for the Sanctuary on the Bryco property, construction drawings for the Sanctuary sewer system were never completed. Appellants also never applied to the Ohio EPA for a permit to construct sewers on the Bryco property. As a result, a sewer permit for the Sanctuary was neither approved nor denied by Milford. We agree with the common pleas court that "absent the submission of the necessary documents which are prerequisite to the issuance of a permit * * *, the issuance of a writ of mandamus [would be] premature" with regard to the Sanctuary. With regard to Riverwoods, White clearly testified that he would have approved construction of the sewer system only if it had been approved by the city's zoning director, Anderson. In light of the foregoing, we cannot agree with appellants that they had complied with all legislative and regulatory requirements under the township zoning code as enforced by Milford.[2]
We also reject appellants' contention that an appeal under R.C. 2506.01
would not be adequate. While the Ohio Supreme Court has held that "the mere existence of the remedy of appeal does not necessarily bar the issuance of a writ of mandamus[,]" State ex rel. Liberty Mills, Inc. v.Locker (1986), 22 Ohio St.3d 102, 104, the court has also held that "[t]he proper procedure to test an official's refusal to issue a building permit is by way of appeal to the court of common pleas after all administrative remedies of appeal, if any, are exhausted." The Chapel v.Solon (1988), 40 Ohio St.3d 3, syllabus.
Article XIX of the township zoning code vests jurisdiction in the township board of zoning appeals to hear and decide appeals from decisions "of the administrative Officer * * * where it is alleged there is error in any order, requirement, decision or determination made by an administrative Official in the enforcement of [the township zoning code]." Article XXI, in turn, provides that "[a]ppeal from the decision of the Zoning Inspector may be made to the Board of Appeals as provided in Article XIX." "Where a constitutional process of appeal has been legislatively provided, the sole fact that pursuing such process would encompass more delay and inconvenience than seeking a writ of mandamus is insufficient to prevent the process from constituting a plain and adequate remedy in the course of law." State ex rel. Willis v. Sheboy
(1983), 6 Ohio St.3d 167, paragraph one of the syllabus.
Apart from their conclusory assertion that an appeal under R.C. 2506.01
"would not be adequate," appellants have failed to show or explain why that remedy was inadequate or unavailable. In light of Anderson's refusal to issue a sewer permit for Riverwoods, we find that appellants have a plain and adequate remedy in the ordinary course of law by way of appeal under Articles XIX and XXI of the township zoning code and R.C. Chapter 2506 from the denial of the sewer permits previously sought. See Sheboy,6 Ohio St.3d at 168.
We are mindful of the Ohio Supreme Court's decision in State ex rel.The Killeen Realty Co. v. East Cleveland (1959), 169 Ohio St. 375, cited by appellants for the proposition that "a writ of mandamus may be allowed to compel the granting of building permits denied by local authorities on zoning grounds. * * * Thus the right to maintain a mandamus action to compel the issuance of a building permit in a proper case is well established." Id. at 377-378. We find, however, that the holding ofKilleen does not apply to the case at bar as Killeen was implicitly overruled in State ex rel. Sibarco Corp v. Berea (1966), 7 Ohio St.2d 85
(holding that all decisions of the supreme court contrary to the principle that a writ of mandamus must not issue, where there is a plain and adequate remedy in the ordinary course of the law, are either overruled or disapproved). Appellants' first assignment of error is overruled.
In their second assignment of error, appellants challenge the common pleas court's finding that Anderson's December 4, 1997 letter denying issuance of permits for Riverwoods was a final appealable decision pursuant to R.C. 2506.01. Citing State ex rel. Casale v. McLean (1991),58 Ohio St.3d 163, appellants contend that Anderson's letter was an improper collateral attack of the township zoning director's 1996 decision which determined appellants' rights and which Milford failed to appeal.
At the outset, we find that Casale is factually different from the case at bar. In Casale, the owners of a mobile home park located in a township were granted a variance in 1965 by the township board of zoning appeals to expand their park. The owners did not act on the variance and the park was later conveyed to new owners. In 1987, the then current township zoning inspector denied the new owners a zoning certificate to expand the park. The owners sought a writ of mandamus to compel the township zoning inspector to issue a zoning certificate in accordance with the variance. The Ohio Supreme Court upheld the granting of the writ on the ground that because no timely appeal was taken from the township board of zoning appeals' decision, the matter was res judicata and the township zoning inspector was precluded from attacking the decision collaterally more than twenty years later. Unlike our case, which involved both a city and a township, only a township was involved in Casale. We therefore find that the reasoning and the holding of Casale do not apply to the case at bar.
We further find that Milford could not have appealed the township zoning inspector's decision to the township board of zoning appeals. R.C. 519.15 governs appeals to township boards of zoning appeals and provides in relevant part that "[a]ppeals to the board of zoning appeals may be taken by any person aggrieved or by any officer of the township affected by any decision of the administrative officer." Article XIX of the township zoning code governs the township board of zoning appeals and similarly provides that "[a]ppeals to the Board may be taken by any person aggrieved or by any Officer of the Township affected by any decision of the administrative Officer." Milford is neither a person nor a township officer. Neither R.C. 519.15 nor the township zoning code provide for a municipality to appeal a decision of the township administrative officer. Appellants do not cite, and we have not found any cases supporting appellants' contention that a municipality can appeal a decision of a township administrative officer to the township board of zoning appeals.
R.C. 2506.01 provides in relevant part that "[e]very final order, adjudication, or decision of any officer, * * * authority, board, * * * may be reviewed by the court of common pleas[.] * * * A `final order, adjudication, or decision' means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person[.]"
Once Milford adopted the township zoning code for the Gatch property in December 1997, the township lost its zoning jurisdiction, Milford acquired zoning jurisdiction over the property and became the authority in charge of enforcing the township zoning code. See Bd. of Twp. Trusteesv. Miamisburg (May 16, 1983), Montgomery App. No. CA 8086, unreported. Anderson's decision to reject appellants' application for a sewer permit for Riverwoods was "a final decision which determined `rights, duties, privileges, benefits, or legal relationships' within the meaning of R.C.2506.01, and was appealable to [a court of common pleas]." See State exrel. Eliza Jennings, Inc. v. Noble (1990), 49 Ohio St.3d 71, 73. Appellants' second assignment of error is overruled.
Given this court's determination, as expressed in response to appellants' first and second assignments of error, that appellants have or had an adequate remedy at law and are thus not entitled to a writ of mandamus, appellants' third, fourth, fifth, and sixth assignments of error are overruled as moot. The common pleas court's judgment denying mandamus is affirmed.
YOUNG, P.J., concurs.
POWELL, J., concurs separately.
[1] R.C. 519.18 provides in relevant part that "[u]pon annexation of township territory to an existing municipal corporation[,] the zoning regulations then in effect shall remain in full force and shall be enforced by the township officials until the legislative authority of said municipal corporation shall either adopt the existing zoning regulations or new regulations for such territory."
[2] As later discussed with respect to appellants' second assignment of error, once Milford adopted the township zoning code for the Gatch property, the township lost its zoning jurisdiction, Milford acquired zoning jurisdiction over both the Bryco and Gatch properties and became the zoning authority in charge of enforcing the township zoning code.